No. 19,557.

THE TIGER DRILL MANUFACTURING COMPANY, *Appellant,* v. A. E. RICE, *Appellee.*

SYLLABUS BY THE COURT.

1. NEW TRIAL—*Accident and Surprise.* A judgment will not be reversed on account of accident and surprise in the introduction of evidence, where the pleading of the opposite party discloses the facts which that evidence tends to prove.

2. NEW TRIAL—*Newly Discovered Evidence.* A judgment will not be reversed because of newly discovered evidence where the party complaining had access to all, and took the depositions of part, of the witnesses disclosing such newly discovered evidence, in the absence of any showing of diligence to produce such evidence at the trial.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed June 12, 1915. Affirmed.

*D. B. Fuller,* of Eureka, for the appellant.

*Howard J. Hodgson,* of Eureka, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff alleged that the note sued on had been executed and delivered to the J. S. Rowell Manufacturing Company, a corporation; that the company, for a valuable consideration, before maturity, transferred and delivered the note to the German National Bank of Beaver Dam, Wis.; and that the bank in like manner transferred and delivered the note to T. S. Roberts, who in turn, for a valuable consideration, transferred and delivered the same to the plaintiff.

The defendant alleged that the note was given for stock in the payee corporation; that false representations were made by the payee to induce the defendant to purchase the stock and give the note; that the defendant was employed as a traveling salesman; that the note was to be paid out of commissions earned by defendant as such salesman and out of the dividends on the stock in the corporation held by the defendant; that the payee became insolvent, sold its assets and property, and was unable to perform its contract with the defendant; that after the execution and delivery of the note, the J. S. Rowell Manufacturing Company became financially embarrassed and insolvent, and thereafter the plaintiff, The Tiger Drill Manufacturing Company, through its president, T. S. Roberts, entered into a contract, both orally and in writing, under the terms and provisions of which it was agreed by and between the J. S. Rowell Manufacturing Company, through its officers, and the Tiger Drill Manufacturing Company, through its president, T. S. Roberts, that in consideration of the sale and transfer of the property and busi-

ness of the J. S. Rowell Manufacturing Company to the Tiger Drill Manufacturing Company, that company would pay all the debts of the J. S. Rowell Manufacturing Company, and in the agreement and contract it was specifically agreed that the note sued on in this action, which was then held by a certain bank as collateral security on indebtedness due by the J. S. Rowell Manufacturing Company, the name of which bank the defendant was unable to state, should be paid by the Tiger Drill Manufacturing Company, the plaintiff in this action, and the note canceled and surrendered to this defendant.

The defendant testified that he had a conversation with T. S. Roberts, president of the Tiger Drill Manufacturing Company, at Kansas City, in which Roberts told the defendant in substance that he, Roberts, saw the contract of the defendant at the meeting of the creditors of the J. S. Rowell Manufacturing Company in Beaver Dam, Wis., and the creditors all agreed that the note in question should be paid off out of his commissions that he had earned; that he had not received a cent out of the business and they had the stock and did not expect him to pay anything on the note; that the note would be canceled; that it was a $200,000 plant, and that Roberts bought it for $1, with an agreement that he was to settle with all creditors, and the Rice "note was to be taken in as one of the creditors."

The plaintiff gave notice that it was surprised at this testimony, but made no application for a continuance at that time.

The depositions of M. A. Jacobs, cashier of the German National Bank, and of T. S. Roberts, were read on the trial.

On the motion for a new trial, the affidavits of T. S. Roberts, James E. Malone and M. A. Jacobs were read in support of the allegation of newly discovered evidence. The affidavit of Roberts contradicted the evidence of the defendant concerning the conversation

with him at Kansas City. Other than surprise, there is no reason given for not having the depositions or other evidence of these witnesses at the trial.

The plaintiff argues that it ought to have been granted a new trial because of surprise in the testimony of the defendant concerning the conversation with T. S. Roberts at Kansas City, and because of the newly discovered evidence to contradict that testimony.

The facts which this evidence tended to establish were disclosed in the answer. The depositions of T. S. Roberts and of the cashier of the bank mentioned in the answer were taken and were read on the trial. Why they were not examined concerning the matters alleged in the answer is not shown. They and the officers of the J. S. Rowell Manufacturing Company could testify to the transactions connected with the note. The affidavits of T. S. Roberts, the cashier of the bank, and of the attorney for the J. S. Rowell Manufacturing Company, were read on the hearing of the motion for a new trial. These affidavits disclosed what their evidence would probably be, but they did not show why their evidence had not been taken or produced at the trial. The plaintiff did not, on the hearing of the motion for a new trial, show accident or surprise which ordinary prudence could not have guarded against.

Why was this evidence not produced on the trial? The plaintiff did not answer the question. It was the duty of the plaintiff to show why that evidence was not produced and to show that it was through no want of diligence on its part that the evidence was not then produced. It was likewise the duty of the plaintiff to show what effort it made to procure that evidence. No showing was made concerning any of these matters. When the defendant, in his answer, set out the facts on which he would rely, and the plaintiff examined some of the witnesses by which those facts could be controverted, if they were not true, and the plaintiff failed to produce the evidence of these witnesses at the trial,

and gave no reason for not producing that evidence, it can not be heard to say that it was surprised in a way that ordinary prudence could not have guarded against, or that it could not with reasonable diligence have discovered the evidence and produced it at the trial.

Many decisions of this court support the views herein expressed, a few of which are: *Smith v. Williams,* 11 Kan. 104; *Clark v. Norman,* 24 Kan. 515; *Carson, Pirie, Scott & Co. v. C. M. Henderson & Co.,* 34 Kan. 404, 8 Pac. 727; *Cudahy v. Hays,* 74 Kan. 124, 85 Pac. 811; *Lillard v. Railway Co.,* 79 Kan. 25, 98 Pac. 213.

The plaintiff has not shown anything to justify a reversal of the judgment, and it is therefore affirmed.